## RITENOUR *v.* MATHEWS.

CONTRACT.—*Proposition not Accepted.*—A mere proposition made by a defendant-surety in a judgment to the judgment-plaintiff, while the judgment is in full force, that if the latter will accept other sureties from the principal defendant, and release or enter satisfaction of the judgment so as to discharge said defendant-surety therefrom, he will surrender to the principal defendant a promissory note which he holds against said principal defendant, does not constitute a contract, notwithstanding the judgment-plaintiff should afterwards perform the things so to be done by him, unless said judgment-plaintiff agrees with said defendant-surety to accept such other sureties from said principal defendant, or gives said defendant-surety notice that he will act upon said proposition.

APPEAL from the Tippecanoe Common Pleas.

DOWNEY, J,—This action was brought by the appellant against the appellee on two promissory notes executed by the latter to the former.

The defendant answered in several paragraphs, but, by agreement, only the third and sixth are set out in the record.

The third is as follows: That the defendant is entitled to have a surrender and full cancellation of the notes on which the suit is brought, because that in April, 1862, one Jones recovered judgment in the Warren Circuit Court against the defendant, said plaintiff, and one William Ritenour, on one or more promissory notes executed to Jones by Mathews, as principal, and Anthony and William Ritenour, as sureties for Mathews; that the judgment was for $1,969.20 and costs, that before and at the time said judgment was rendered, Mathews was in insolvent and embarrassed circumstances, and unable to pay his debts, and said sureties were in great danger of having to pay said debt; that the plaintiff owned a large body of land, on which the judgment was a lien, and was extremely anxious to be released from his liability on account of said suretyship, and to that end agreed with Jones that if Jones would accept such other sureties as defendant could procure, and release the plaintiff from the judgment, he would give up the notes on which this suit is brought to the defendant as satisfied; that in pursuance of said agreement with Jones, the defendant did procure other

securities which Jones accepted, and Jones went to the town of Williamsport, ten miles, and entered satisfaction of the judgment against the plaintiff, as he had agreed to do; wherefore the defendant says that inasmuch as the agreement of Jones was for the benefit of the said defendant, he is entitled to have the benefit thereof, though the consideration for the plaintiff's promise passed from Jones. Prayer, that the plaintiff be compelled to surrender up the notes, &c.

The sixth paragraph is as follows: That Jones had recovered judgment as above stated; that the plaintiff agreed with Judy and Keys that if they would become sureties for the defendant to Jones for the amount of the judgment, whereby Jones would release plaintiff, he would cancel and surrender the notes on which this suit is brought to the defendant; that Judy and Keys accepted the offer of plaintiff, became sureties for Mathews to Jones in a note for the amount of the judgment, and Jones thereupon entered a release and satisfaction for the judgment against the plaintiff, the defendant, and William Ritenour, which agreement was made and entered into for the benefit of said Mathews; wherefore the defendant says he is entitled to have said notes surrendered, &c. See 31 Ind. 31.

There was a general traverse of these paragraphs of the answer.

Upon the issues thus formed, there was a trial by jury, and a general verdict for the defendant, accompanied by answers to interrogatories which had been submitted to the jury.

There was a motion by the plaintiff for a new trial for the following reasons: first, the court erred in refusing to give instruction number two asked by the plaintiff; second, in requiring the jury to answer interrogatories 1, 2, 3, 4, 5, and 6, asked by the defendant; third, the general verdict and answers to interrogatories are unsupported by the evidence; fourth, are contrary to law; fifth, the court erred in admitting the evidence of the defendant over the plaintiff's objection, to prove the alleged contract for the surrender of the notes;

sixth, the general verdict is not sustained by sufficient evidence.

This motion was overruled, and final judgment was rendered. The evidence and instructions of the court are set out in a bill of exceptions contained in the record.

The facts of this case, as disclosed by the answers, which we have set out, leave an unfavorable impression upon the mind. The plaintiff had become the security of the defendant to Jones. Jones had obtained a judgment on the notes against the principal and the sureties. It was the duty of the defendant, if he would be considered an honorable, or even an honest man, to make every reasonable effort in his power to shield his security from the payment of the debt. He had no right, legally or morally, by failing to discharge the debt, and thus allowing the security, whom he should have protected, to became alarmed for his safety, to speculate upon his fears and his necessities. He did obtain other securities, and thus relieve the plaintiff from liability, and he now seeks to have the notes involved in this case satisfied because he did that which he was in every sense, as an honorable and an honest man, bound to do without any recompense therefor.

But we will see how the case results. The evidence was as follows :

An agreement of the parties that the third and sixth paragraphs of the answer are true, except the alleged agreement between the plaintiff and Jones in the third paragraph, and the alleged agreement between the plaintiff and Judy and Keys in the sixth paragraph.

Jones testified that he held the judgment referred to, which he released on Mathews giving him Judy and Keys as security. Shortly after the judgment was rendered, the plaintiff in this case came to him and wanted an execution issued on it, which was done, which was afterwards returned unsatisfied at his instance, after finding that Mathews had no property, and that it had to come out of him. The plaintiff saw him several times after the judgment was rendered, and told

him that if Mathews would have him released by giving other securities that he would accept, he would surrender to Mathews some notes which he held on him, amounting to about six hundred dollars. He stated this several times, *but there was no contract made between plaintiff and him.* The judgment stood some two or three years. Judy came to him and asked him if he would not take other sureties and release the judgment. He said he would. Afterwards, Mathews made a note, and Judy and Keys signed it, for the amount of the judgment, which he then entered satisfied. It was agreed between Mathews and him that when he had satisfied the judgment, he was to get Smith, the clerk of the court, to write to Mathews that it was done, that he might show the letter to the plaintiff and get up his notes. He satisfied the judgment, and Smith wrote the letter informing Mathews of the fact.

James Mathews, the defendant, stated, that Jones held a note on him as principal, with plaintiff and his brother as securities, for something over nineteen hundred dollars. He was embarrassed and unable to pay his debts, and Jones put the note in judgment. The plaintiff in this suit held the notes now in controversy in this suit against him. He became uneasy about the judgment shortly after it was rendered, and wanted to be released. He proposed that if he, defendant, would give other securities to Jones and have the judgment satisfied, he would surrender the notes in suit to him. He told him he would do it. Jones came to see him about it, and said if he would get other good securities he would release the judgment, and the plaintiff would give up the notes to him. He then saw Judy and Keys and told them what the plaintiff would do, and that he could make about six hundred dollars by giving a note with surety that Jones would accept and having him release the judgment. They said they would go security on the note to Jones to get the notes surrendered to him. He afterwards saw plaintiff, and told him that Judy and Keys had agreed to go security, and asked him if he would still do as he had said, and he said he would— to get the docket receipted and send him the receipt. Judy

and Keys did go on the note, and he got the receipt of the judgment, and took it to Ritenour. He saw the plaintiff afterwards, and he wanted him to divide it with him. He said it looked pretty hard. He said to the plaintiff, that he did not think it was hard to do as a man agreed to do. At the time the judgment was released he was not able to pay his debts. He was handling cattle, bought with the money and in the name of others, getting pay for feed and a share of the profits.

*Judy.*—Had no conversation with the plaintiff with reference to the agreement. If he had not supposed that he was helping Mathews to that extent, he would not have gone on the note to Jones.

*Keys.*—Mathews came to him shortly before the judgment was released, and told him what the plaintiff proposed. He had no communication with the plaintiff on the subject. Went security with the faith that Mathews would make the six hundred dollars, or he never would have done it.

*William Ritenour.*— Was surety with the plaintiff for Mathews in the note and judgment to Jones. The plaintiff told him several times that he would give up the notes if Mathews would get him released from the judgment. Went to see Mathews and told him about it, at the request of the plaintiff.

This was the evidence on the part of the defendant.

Ritenour, the plaintiff, testifies, he never entered into any agreement with Jones, or with Judy and Keys, that he would surrender the notes in controversy. He told Mathews that he would give up the notes, if he would get him released from the Jones judgment. Told him this several times. He told Jones what he had said to Mathews. Jones never agreed with me that he would release the judgment. The last talk with Jones was six months before the judgment was released. Mathews' condition, financially, was better than when the judgment was rendered. He had at least one hundred and fifty large cattle in his possession, feeding, worth at least fifty dollars per head, when the judgment was released. It was

understood that he was "wiggling" out of his difficulties. The last time he talked with Mathews about the judgment and surrender of the notes was some months before the release of the judgment. This was all the evidence.

It is alleged in the assignment of errors, that the court erred in refusing to grant a new trial on the motion of the plaintiff, and all the points made are embraced in that assignment.

The first reason stated for granting a new trial was, that the court had erred in refusing to give instruction number two asked by the plaintiff. That instruction was as follows: "The mere proposition of the plaintiff to Jones, while his judgment was in full force, that if he would accept other sureties from Mathews and release or enter satisfaction of the judgment so as to discharge the plaintiff from the same, he, the plaintiff, would surrender the notes in this suit to Mathews, would not make a contract unless Jones agreed with the plaintiff that he would accept such other sureties from Mathews, or gave the plaintiff notice that he was going to act upon the plaintiff's proposition."

In view of the testimony of Jones, that "there was no contract made between plaintiff and him," this charge should have been given to the jury. A mere proposition, not in any way accepted, does not make a contract. This is a familiar principle in the law of contracts, and needs no authorities for its support.

The next question is with reference to the action of the court in submitting the interrogatories to the jury. As to this we are in doubt whether the question is well presented by the record or not. There was an objection, but no exception at the time.

The next point made relates to an objection to the reception of the testimony of the defendant, in proof of an agreement between *himself* and the plaintiff.

This evidence was wrongly admitted. In the third paragraph the agreement was alleged to have been made with Jones; and in the sixth paragraph it was alleged to have been

made with Judy and Keys. It did not tend to support either paragraph of the answer.

The next point made is as to the sufficiency of the evidence to sustain the verdict of the jury. We think the evidence fails to sustain the third or the sixth paragraph of the answer. There was no contract proved, either between the plaintiff and Jones or between him and Judy and Keys.

The judgment is reversed, with costs; and the cause is remanded, with directions to set aside the verdict and grant a new trial.

*J. McCabe*, for appellant.

*W. C. Wilson* and *J. H. Brown*, for appellee.